Sidney V. BROUSSARD and Christine Broussard

v.

JOHN E. GRAHAM & SONS, Offshore Trawlers, Inc., and Offshore Marine, Inc.

Civ. A. 92–308–B.

United States District Court, M.D. Louisiana.

Sept. 9, 1992.

Jerry Joseph McKernan, Friedman and McKernan, Baton Rouge, La., for plaintiffs.

Michael M. Christovich, Lyon H. Garrison, Christovich & Kearney, New Orleans, La., for Atlantic–Richfield Co.

Mark Charles Dodart, George Moore Gilly, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for John E. Graham & Sons, Offshore Trawlers, Inc. and Offshore Marine, Inc.

### RULING ON PLAINTIFFS' MOTION TO REMAND

POLOZOLA, District Judge.

Plaintiffs filed this suit against John E. Graham & Sons ("Graham"), Offshore Trawlers, Inc. ("Offshore Trawlers"), Offshore Marine, Inc. ("Offshore Marine") and Atlantic–Richfield Company ("ARCO") in state court to recover damages arising from personal injuries that allegedly occurred when plaintiff was being transferred from a fixed platform owned and operated by ARCO to a vessel.[1] The parties agree that the accident occurred near or on ARCO's South Pass 60–E platform which is located on the Outer Continental Shelf approximately eight miles off the coast of Louisiana. Defendants timely removed this suit to federal court pursuant to 28 U.S.C. § 1441.[2]

Defendants claim that the federal court has subject matter jurisdiction under 28 U.S.C. § 1331[3] because the plaintiffs have invoked statutory rights under the Outer Continental Shelf Lands Act ("OCSLA")[4] by purposefully asserting in their state court petition claims of negligence and strict liability under Louisiana law. Moreover, defendants contend that diversity of citizenship exists between plaintiffs and defendants thereby giving rise to subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[5]

---

1. Christine Broussard has filed a separate claim for loss of consortium.

2. 28 U.S.C. § 1441 provides in relevant part:
   (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.
   (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship of residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

3. 28 U.S.C. § 1331 states:
   The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

4. 43 U.S.C. §§ 1331–1356.

5. 28 U.S.C. § 1332 states:
   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
      (1) citizens of different States; ...

The plaintiffs have filed a motion to remand this suit to state court. In their motion to remand, plaintiffs contend that this action is premised on general maritime law and the Longshoreman and Harbor Worker's Compensation Act[6] which was brought in state court pursuant to the "saving to suitors" clause embodied in 28 U.S.C. § 1333(1).[7] Plaintiffs argue that since this is a "savings to suitors" case, the case is not removable absent diversity of citizenship.[8]

In response to plaintiffs' motion to remand, defendants argue that this Court should find jurisdiction under the OCSLA, which provides:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection, with (A) any operation conduct on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals ...[9]

■ The Fifth Circuit has recognized that Congress enacted the OCSLA in order to establish federal control over resources on the Outer Continental Shelf.[10] However, 43 U.S.C. § 1333(a)(2) also provides that the law of the adjacent state is to be applied as "surrogate federal law" to the extent that state law is not inconsistent with federal law.[11] In other words, if plaintiff seeks relief based on state law for an accident arising from operations conducted on the Outer Continental Shelf which involve exploration of minerals, the plaintiff seeks relief based on federal law through the OCSLA. Therefore, a claim for relief under state law for an accident which occurs on the Outer Continental Shelf requires a federal district court to exercise federal question jurisdiction under 28 U.S.C. § 1331.

■ In Paragraph 8 of the state court petition, plaintiffs asserted a claim against ARCO based on the following allegation:

> Petitioners aver that all of his damages were caused by the negligence of the vessel, owned and/or controlled by the defendants and their agents or employees and by the negligence and/or strict liability of Atlantic–Richfield Company all of which is listed as, but not limited to, the following:
>
> \*     \*     \*     \*     \*     \*
>
> h. Any other act or omission of the defendants and/or its agents or employees with regard to the vessel which may be proven to constitute negligence under the Longshoreman and Harbor Worker's Act Section 905(b) and **the laws of Louisiana.** (Emphasis Added)

Since plaintiffs have sought relief against ARCO under the laws of the state of Louisiana, they have set forth legal claims based on OCSLA, which give the federal court jurisdiction.[12]

Plaintiffs' contention that this case is governed by maritime law has no merit in the context of the jurisdictional issue before the Court. In deciding whether a case is governed by the OCSLA, the Fifth Circuit has articulated the following test:

> [F]or adjacent state law to apply as surrogate federal law under OCSLA, three conditions are significant.
>
> (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto).

---

**6.** 33 U.S.C. § 905(b).

**7.** 28 U.S.C. § 1333 reads in pertinent part:
The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suits in all cases all other remedies to which they are otherwise entitled.

**8.** See *Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 371, 79 S.Ct. 468, 479, 3 L.Ed.2d 368 (1959).

**9.** 43 U.S.C. § 1349(b)(1).

**10.** *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223 (5th Cir.1985).

**11.** *Rodrigue v. Aetna Cas. and Surety Co.,* 395 U.S. 352, 357, 89 S.Ct. 1835, 1838, 23 L.Ed.2d 360 (1969); *Moses v. Marathon Oil Co.,* 749 F.2d 262, 263, n. 2 (5th Cir.1985).

**12.** *Id.*

(2) Federal maritime law must not apply of its own force.

(3) The state law must not be inconsistent with federal law.[13]

Recent cases from the Fifth Circuit recognize a split of authority in the Fifth Circuit in deciding whether to apply state law versus maritime law when maritime and OCSLA law overlap. In *Laredo Offshore Contractors, Inc. v. Hunt Oil Co.*,[14] *Recar v. CNG Producing Co.*[15] and *Smith v. Penrod Drilling Corp.*[16] the Fifth Circuit applied maritime law when both OCSLA law and maritime law overlapped. Conversely, *Matte v. Zapata Offshore Co.*[17] supports the application of state law to fixed platforms such as the one involved in this case to the exclusion of maritime law. The most recent Fifth Circuit opinion on the issue, *Smith v. Penrod Drilling Corp.* has followed the mandate of *Laredo Offshore.*[18]

Notwithstanding the apparent inconsistency in the above Fifth Circuit decisions, the rules regarding jurisdiction are clear. The sole question before this Court on plaintiffs' motion to remand is whether OCSLA vests this Court with subject matter jurisdiction in this case. It is clear that plaintiffs in their state court petition seek at least partial relief based upon state law. To the extent plaintiffs seek such relief, federal question jurisdiction has been invoked through the OCSLA.

■ It is important to emphasize that the question of subject matter jurisdiction is entirely independent of choice of law analysis. Although plaintiffs argue in their brief that this is a maritime action to be adjudicated under principles of maritime law,[19] it is clear from a reading of the plaintiffs' state court petition that plaintiffs have also sought relief under state law.

If maritime law would apply in this action, such an application would not divest the Court of federal question jurisdiction. The decision to apply maritime law would result from choice of law rules which have been erected by the Fifth Circuit when both maritime law and OCSLA apply to a given controversy. The Fifth Circuit has acknowledged the distinction between choice of law analysis and jurisdictional analysis. Thus, the Fifth Circuit has held that a federal district court can have jurisdiction over an action under the OCSLA without applying the statute to resolve the controversy.[20] Thus, in *Recar*, the Fifth Circuit wrote:

> CNG argues that OCSLA does not provide the district court with subject matter jurisdiction because of the maritime flavor of this case. CNG points out that Recar spent most of his time actually working from the M/V GRADY FAGAN, and that his injuries were sustained when he landed on the deck of a vessel while trying to board her. CNG's argument misses the point. The district court may well have both admiralty jurisdiction under the general maritime law and federal question jurisdiction by virtue of OCSLA. As we stated in *Laredo*, "where admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law." The district court may well conclude that the relationship of the alleged "wrong" in this case to traditional maritime activity is sufficiently strong to characterize the wrong as a maritime

---

13. *Dupont v. Sandefer Oil & Gas, Inc.*, 963 F.2d 60, 61 (5th Cir.1992); *Smith v. Penrod Drilling Corp.*, 960 F.2d 456, 459 (5th Cir.1992); *Union Texas Petroleum Corp. v. PLT Eng'g*, 895 F.2d 1043, 1047 (5th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990).

14. 754 F.2d 1223 (5th Cir.1985).

15. 853 F.2d 367 (5th Cir.1988).

16. 960 F.2d 456 (5th Cir.1992).

17. 784 F.2d 628 (5th Cir.1986).

18. *Smith, supra*, at note 15.

19. For example, plaintiffs analyze the maritime nexus question using the test set forth in *Executive Jet v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Plaintiffs also posit that embarkation of a worker onto a vessel gives rise to application of maritime law.

20. *Recar v. CNG Producing Co.*, 853 F.2d 367 (5th Cir.1988).

tort which requires the application of general maritime law. But we are not called upon at this time to decide which body of law applies to this case. The district court will make this determination based upon principles articulated in a number of cases that have considered this question.... The sole question presented to us in this appeal is whether OCSLA invests the district court with original federal question jurisdiction. For the reasons stated above, we answer this question in the affirmative. (Citations omitted.) [21]

Plaintiffs' reliance on this Court's opinion in *Coody v. Exxon Corp.*[22] is misplaced due to distinguishing factual circumstances. In *Coody*, plaintiff was being transferred from a vessel to a platform located on the Outer Continental Shelf. The plaintiff in *Coody* asserted a claim based *only* on general maritime law in a state court action brought pursuant to the "saving to suitors" clause. Plaintiff never mentioned either OCSLA or state law in his state court petition. The defendants asserted that although *Coody* did not assert a claim under OCSLA, Coody's claim was cognizable under OCSLA, and the case was removable to federal court. This Court rejected defendant's argument and held that "[u]nder the circumstances, a defendant cannot use an unasserted federal claim as the basis for removing this case to federal court."[23]

The important difference between this case and *Coody* is that the Broussards have expressly asserted a claim under OCSLA by seeking relief as defined by the "Laws of Louisiana." State law is only applicable as a basis of recovery in a fixed platform case under OCSLA, which adopts state law as surrogate federal law.[24] Therefore, the plaintiffs in this case have subjected their suit to the Court's federal question jurisdiction by asserting a state law claim in the state court petition.

Plaintiffs' reliance on *Fogleman v. Tidewater Barges, Inc.*[25] is also misplaced. Plaintiffs rely on the following language from the *Fogleman* opinion: "[I]t is immaterial that the plaintiff could have asserted a federal claim under OCSLA.... [W]here the *Executive Jet* test is satisfied, as in the instant case, OCSLA cannot be a basis for federal question removal because the case necessarily has a maritime character."[26] Although omitted from the plaintiffs' brief, the Court in *Fogleman* also stated:

> [W]hen a plaintiff elects to proceed under the savings to suitor clause and he is able to plead facts sufficient to meet the *Executive Jet* test for admiralty jurisdiction, the mere fact that he may also have asserted a claim under OCSLA will not vest the court with federal question jurisdiction. In such a case, removal is only possible if diversity exists.[27]

In *Thurmond v. Union Oil Co. of California,*[28] the court refused to follow the broad language in *Fogleman,* because the court found *Thurmond* distinguishable from *Fogleman.* In *Thurmond,* the plaintiffs asserted claims under the general maritime law and under Louisiana negligence laws. The court recognized that the plaintiffs in *Fogleman* did not assert claims under OCSLA or Louisiana law, but only under the general maritime law. Thus, the *Thurmond* court held that "[t]he *only* way Louisiana law is applicable as a basis of recovery in this case is through OCSLA. Thus, Plaintiffs' claims were

**21.** *Recar,* 853 F.2d at 369–370.

**22.** 630 F.Supp. 202 (M.D.La.1986)

**23.** *Coody,* 630 F.Supp. at 205.

**24.** *Thurmond v. Union Oil Co. of California,* CA 90–4812 (E.D.La. January 11, 1991) (per Judge McNamara).

**25.** 747 F.Supp. 348 (E.D.La.1990).

**26.** Plaintiffs' memorandum in support of motion to remand, p. 5; citing *Fogleman,* 747 F.Supp. at 355–56.

**27.** *Fogleman,* 747 F.Supp. at 356.

**28.** CA 90–4812 (E.D.La. January 11, 1991) (per Judge McNamara).

made pursuant to the OCSLA, and this claim is within the jurisdiction of this court and is removable." [29]

The Court finds *Fogleman* is distinguishable from the present case. This Court finds that the present case is factually analogous to *Thurmond* and concurs in the decision reached in *Thurmond*.

In summary, the Court finds that the plaintiffs asserted claims under the general maritime law and Louisiana law in their state court petition. Since Louisiana law is only applicable as a basis for recovery in this case under OCSLA, which adopts state law as surrogate federal law, this case falls within the Court's federal question jurisdiction and is removable.

Since the Court finds it has federal question jurisdiction based on the claim brought under the OCSLA, the Court retains supplemental jurisdiction over all pendant maritime law claims including those that involve additional parties.[30]

Because there is federal question jurisdiction, the Court need not consider whether the Court also has jurisdiction based on diversity of citizenship.

THEREFORE, IT IS ORDERED that plaintiffs' motion to remand be and it is hereby DENIED.

---

29.  *Thurmond,* CA 90–4812 at 2.

30.  See 28 U.S.C. § 1367(a) which provides:
Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdic-

tion over all other claims that are so related to claims in the action within such original jurisdiction under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.